Argued and submitted May 21 at Eastern Oregon University, La Grande;
resubmitted en banc December 11, 2002, reversed and remanded for new trial
February 19, 2003

## STATE OF OREGON,
### *Respondent,*

*v.*

## LAMAR ESQUIRE MCKINZIE,
### aka John Doe #2,
### *Appellant.*

### 993803CFE; A111230

63 P3d 1214

Jay Edwards argued the cause and filed the brief for appellant.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, and Brewer, Judges.

EDMONDS, J.

Kistler, J., dissenting.

## EDMONDS, J.

Defendant appeals his convictions for sodomy in the second degree, ORS 163.395, rape in the second degree, ORS 163.365, and unlawful sexual penetration in the second degree, ORS 163.408. He assigns error to the trial court's admission into evidence under OEC 803(18a)(b) the minor victim's out-of-court statements describing her abuse by defendant. He asserts that the evidence was inadmissible because the state did not comply with the notice requirement of the rule. We conclude that the trial court erred and therefore reverse.

OEC 803(18a)(b) provides an exception to the general rule excluding hearsay for certain statements made concerning acts of abuse:

> "A statement made by a person concerning an act of abuse as defined in ORS 107.705 or 419B.005, a statement made by a person concerning an act of abuse of an elderly person, as those terms are defined in ORS 124.050, or a statement made by a person concerning a violation of ORS 163.205 or 164.015 in which a person 65 years of age or older is the victim, is not excluded by ORS 40.455 if the declarant either testifies at the proceeding and is subject to cross-examination, or is unavailable as a witness but was chronologically or mentally under 12 years of age when the statement was made or was 65 years of age or older when the statement was made. However, if a declarant is unavailable, the statement may be admitted in evidence only if the proponent establishes that the time, content and circumstances of the statement provide indicia of reliability, and in a criminal trial that there is corroborative evidence of the act of abuse and of the alleged perpetrator's opportunity to participate in the conduct and that the statement possesses indicia of reliability as is constitutionally required to be admitted. *No statement may be admitted under this paragraph unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, except for good cause shown.*"

(Emphasis added.)

Defendant argues that he was entitled to a minimum of 15 days' notice of the state's intention to introduce the victim's out-of-court statements under OEC 803(18a)(b) and that the trial court erred in admitting the evidence after the prosecutor conceded that she had not filed her notice on time. Defendant was tried together with three other defendants. At a pretrial hearing, Caplan, another defendant's counsel, objected to the introduction of the evidence on the ground that the prosecutor did not comply with the notice requirement. Defendant's counsel, Engle, joined in the objection. The following ensued:

"[PROSECUTOR]: I agree with Mr. Caplan, I didn't file my * * * my notice on time.

"It was kind of interesting in this case, I was getting phone calls from Mr. Engle and Mr. Parker saying, 'You didn't file your notice.' So they all * * * knew that this was going to come in. They all knew this evidence was out there. I think, Your Honor, that this statute talks about how the particulars need to be made available to the defense.

"The particulars were made available to the defense long ago. Mr. Caplan had the videotape on August of '99. Mr. Stone, who then turned over his case to Mr. Engle had the video on August 31st of 1999, and Mr. Orf, who turned over the case to Mr. Parker with respect to Mr. Smith, had the video on November 12th of 1999. This is a case where * * * they have known about this evidence, they know that in all of these cases, the State is going to submit this evidence to the court in trial.

"And * * * the purpose of the statute is so that surprise doesn't happen to the defendants later on and that they're not somehow prejudiced by the fact that some sort of— something happened at the last minute. Basically to let them—let them say well, they didn't know, this notice was not provided to them within 15 days, allows the defense to basically watch the clock and then when I don't file the notice that they know I'm going to file, it enables them to say nah, nah, nah, you didn't file your notice, you don't get your hearsay in. And I don't think that that's the spirit of what this statute is all about, Your Honor.

"I called the Attorney General's office, I asked them * * * if this has ever been litigated before, because there is no case law out there on it at all. They said no. They asked

me about * * * what our discovery practices are in Jackson County. I said we—you know, it's the first thing Mr. Caplan does, is file this motion to * * * get the CASA tape.

"And I think that very clearly they all know * * * that the Advocacy Center takes these statements and that these statements are going to be offered by the State as evidence. Who I talked to at the Attorney General's office said, 'I think you have a good argument that for good cause shown is that * * * the defense bar in your county knows that you have these tapes, that you make them available to—to the defense.'

"And it doesn't seem right to punish the victim just for this—for the fact that * * * a formal notice wasn't filed. I think that they were put on notice, clearly, that * * * this was done in this case.

"MR. CAPLAN: The whole argument presumes that I know how the State is going to try it's case. I don't know that. Just because they give me materials doesn't mean they're going to rely on it.

"THE COURT: Have you got all the materials?

"MR. CAPLAN: Yes. But the statute is clear-cut. It's an exclusionary statute, it says within 15 days. Fifteen days prior to trial and otherwise it can't be used. I mean, that's what the statute says.

"I can't be presumed to know what the State's going to be every time it tries a case. Maybe they want to use them, maybe they don't want to use them. That's their choice to make. The way they make that choice is to file the notice.

"I think about the alibi defense. If a defendant doesn't raise an alibi defense five days before trial, he or she can't use it. The State can sit there and say, 'Well, we didn't get notice,' even if they knew they were thinking about using an alibi, doing the exact same thing that [the prosecutor] is accusing us of doing.

"If you read the statute, it is clearly exclusionary. It needs to be filed at least 15 days prior to trial. It was not, and for that reason, I'm going to object to the admission of any hearsay such as noted in her—in her notice dated May the 3rd.

"[DEFENSE COUNSEL]: I object also, Your Honor. The only exception to the rule is for good cause shown. And I think [the prosecutor] would have to admit that it was simply an oversight. That's not good cause, and I don't know how the court could find any other exception.

"It says clearly that, 'No statement may be admitted unless the proponent gives the other parties 15 days notice, except for good cause shown.' And there's been no good cause shown except that apparently * * * it didn't get done . for—you know, it fell through the cracks or whatever. I don't think that's good cause.

"I think that would refer to a situation where the discovery of the statement * * * was only found out right before trial. In other words, the DA's office didn't know that the victim had made a statement to so-and-so until past the 15 days. So I think it's a real problem for the State. It doesn't appear to have an exception, and I think it would be a good point for appeal if the court lets it in.

"THE COURT: And you also had this information all the time, Mr. Engle?

"[DEFENSE COUNSEL]: I have had most of it, Your Honor. There are a couple of hearsay statements that the victim apparently made that I only got in the last couple of days, but the main—

"[PROSECUTOR]: The video.

"[DEFENSE COUNSEL]: —the main part of it I've had the whole time.

"THE COURT: Okay. Well, I'm denying the motion. I believe it is the practice in the community that all discovery is made available to the defendants. The defendants have had the discovery.

"I don't know that I even need to find good cause in this case, but if I do, I will. Because I think in this case,—and the purpose of the statute clearly is to not allow the prosecution to surprise the defense, and there is no surprise in this case. And I'm not even sure the notice, per se, is required, but if it is, I'm going to find that there is good cause for filing it late.

"[DEFENSE COUNSEL]: Your Honor, just—

"THE COURT: Go ahead.

"[DEFENSE COUNSEL]: I'm sorry. Just * * * for the record, I want to make it clear that on behalf of [defendant], our argument is not that he didn't have the discovery. The argument is that the State is supposed to notify that they intended to use the hearsay at trial.

"THE COURT: I understand."

In *State v. Iverson*, 185 Or App 9, 57 P3d 953 (2002), we held that the trial court erred in admitting the hearsay statements of several child witnesses after the state failed to comply with the notice requirements of OEC 803(18a)(b). We explained that the obvious purpose for the 15-day notice requirement in the rule was to enable a party to know of the intention to offer the evidence at trial long enough before trial to be able to respond to it. We pointed out that such a response could include developing other evidence or, if the declarant testifies, preparing to cross-examine the witness. Because of the legislature's mandate as expressed in the rule, we have no choice but to apply the rule consistently with its terms subject to any exception that the legislature contemplated.

The state contends that the trial court did not err by receiving evidence of the victim's out-of-court statements even though the prosecutor conceded that she had not complied with the time requirement for filing the notice. The state argues,

"The prosecutor provided a copy of the videotape to defendant's counsel in August 1999, more than eight months before trial. Defendant's counsel admitted that he had the videotape 'the whole time.' At the hearing, the prosecutor represented to the court, without exception or contradiction, that counsel for defendant and the codefendants 'all knew that this was going to come in' and that 'they know that in all of these cases, the state is going to submit this evidence to the court in trial.' * * * The prosecutor thus satisfied her duty under the rule to 'make known' her 'intention to offer the statement * * *.' "

Defendant counters with the same argument that he made to the trial court. He argues that the trial court erred because it

believed that providing discovery of the out-of-court state-
ments was sufficient to comply with the requirement of the
rule.

The legislature could have provided that affording
discovery was adequate to satisfy the rule. Instead, however,
it required the offering party *to make known its intention to
offer the evidence at trial* at least 15 days before trial. Con-
trary to the trial court's ruling, the fact that defendant
received discovery of the out-of-court statements of the victim
does not satisfy the rule's requirement. Consequently, unless
an exception applies, the rule must be given efficacy, and it
follows that defendant's convictions must be reversed.

The dissent disagrees in part. It would reverse but
remand the case to the trial court to determine whether it
appears that, on this record, the prosecutor complied with the
rule because it was the recognized custom or practice before
the trial court that, when discovery is provided, the require-
ment that the state make known its intention to offer the evi-
dence at trial is also satisfied. Under the dissent's view, if the
trial court could make that finding on this record, the convic-
tions could be affirmed. Apparently, one premise to the dis-
sent's argument is that, if the state provided defendant with
discovery pursuant to ORS 135.815(1)(d), then "the mere act
of providing discovery—without more—would be sufficient to
make known the state's intention to offer the evidence at trial
[under OEC 803(18a)(b)]." 186 Or App at 398 (Kistler, J., dis-
senting).

First, that interpretation would have the effect of
creating an exception to the notice requirement of OEC
803(18a)(b) that does not appear in its text, contrary to the
admonition of ORS 174.010 that the office of the judge "is
simply to ascertain and declare what is, in terms or in sub-
stance, contained [in a statute], not to insert what has been
omitted[.]" Further, the dissent's argument again ignores
that the focus of the notice requirement is on the affirmative
act or lack thereof of the prosecutor giving timely notice of an
intention to offer the evidence and not on defense counsel's
"silence" or state of mind.

In any event, there is nothing in the record that
would permit the trial court either to find that the prosecutor

provided timely oral notice or to hold that it was a recognized custom and practice that the furnishing of discovery signified the intention to offer the evidence at trial. The only representations in support of the admission of the evidence at the hearing when the ruling was made were those made by the prosecutor. By the time of the trial court's ruling, the prosecutor had filed an untimely written notice of her intent to offer at trial the victim's videotaped statement. The fact that she filed a written notice told the trial court that she was relying on that writing to comply with the statutory requirement and not some other means of notice. When defendant objected to the introduction of the evidence because the written notice was untimely, the prosecutor agreed that "I didn't file my * * * my notice on time." Significantly, she did not urge that she had given notice in some other way. Rather, she argued that defendant could not have been surprised by the evidence because discovery had been furnished to him. As a result, we need not decide whether forms of notice other than a timely written notice satisfy the notice requirement of OEC 803(18a)(b).

Nonetheless, the dissent proposes three reasons why, in its view, the trial court could find on remand that the prosecutor had complied with the notice requirement, despite her concession that the only notice she had given (the written notice) was filed untimely. First, it says that the court could find from the representations of the prosecutor that defendant knew that "it is the district attorney's practice to introduce the resulting interviews in child sex abuse trials." 186 Or App at 402 (Kistler, J., dissenting). That assertion takes the prosecutor's remarks out of context. The thrust of the prosecutor's argument to the trial court was that defendant was not surprised or prejudiced by the untimely written notice, not that she had given some other form of notice. She told the court,

> "Basically to let them * * * say well, they didn't know, *this notice* was not provided to them within 15 days, allows the defense to basically watch the clock and then when I don't file the notice that they know I'm going to file, it enables them to say, nah, nah, nah, you didn't file your notice, you don't get your hearsay in. And I don't think that that's the spirit of what this statute is all about."

(Emphasis added.) In the above context, the prosecutor's statement does not suggest that, when it provides discovery, the state also implicitly provides notice of its intent to use the materials provided in discovery as evidence at trial. Rather, it asserts only that defense counsel could not have been surprised by the substance of the evidence.

Second, the dissent posits that "[t]he trial court could reasonably infer from defense counsel's calls to tell her she had missed the deadline that he was aware that the prosecutor had intended to introduce the videotape but was now barred from doing so." 186 Or App at 402 (Kistler, J., dissenting). Again, that assertion ignores the context of the prosecutor's remarks. Defense counsel's telephone call to tell her that she had missed the deadline must have occurred after the time expired for the giving of the notice. Otherwise, he would have had no reason to tell the prosecutor, according to her representation to the court, "You didn't file your notice."

In further support of its position, the dissent argues that

"[t]he trial court could reasonably infer from counsel's silence that he agreed with the prosecutor—after having received the videotape in discovery, he 'knew that this [evidence] was going to come in.' If that were the trial court's finding, then the terms of OEC 803(18a)(b) would be satisfied."

186 Or App at 402-03 (Kistler, J., dissenting). Whether defense counsel *believed* that the prosecutor intended to offer the evidence at trial misses the point of the statute. The statute makes no exception for the requirement of timely notice based on defense counsel's state of mind, even though that was, in substance, the argument made by the prosecutor. Rather, the statute requires that the party offering the evidence *make known* its intention to the adverse party in some fashion. It follows that the inference that the dissent would have the trial court draw, that defense counsel expected the state to offer the evidence, is of no legal significance.

Finally, the dissent argues that defendant filed a motion to require the prosecutor to provide him with the disputed evidence and that "defendant was entitled to discover

the victim's videotaped statement solely because it was relevant to her testimony at trial[.]" 186 Or App at 403 (Kistler, J., dissenting). The *defendant's* act of seeking discovery has no bearing on whether the *prosecution* performed the affirmative acts necessary to comply with the notice requirement. Further, as the dissent recognizes, to be discoverable under ORS 135.815(1)(a), the statement was required only to be *relevant* to issues at trial. It need not have been an item that would be *offered* at trial.

For all of those reasons, individually as well as when considered together, we are unpersuaded that there is any ground in this record on which the trial court could properly determine that the statute was complied with by the giving of some form of timely notice.

■■ Alternatively, the state argues that the trial court properly exercised its discretion in determining that the prosecutor had good cause for not filing her notice in a timely fashion. According to the state,

"[a]s the prosecutor explained, she provided a copy of the videotape containing the statements to defense counsel several months in advance. She also stated that defense counsel knew the state would offer it at trial. It was only after attorneys for codefendants in the case began calling her and asking about a written notice that she had any reason to think defendant's attorney was silently waiting for a formal written notice of the state's intention.

"To the extent her written notice was required to 'make known' that she intended to offer the videotape, she has good cause for not issuing that notice earlier. She could hardly be expected to know that defense counsel had chosen to ignore what he, himself, characterized as 'the local practice' in such cases and instead insist on some form of formal written notification that is required by neither the rules nor local practice.

"The trial court recognized that. In finding good cause for the prosecutor's delay, the court stated that it was not sure a notice was even required, that the purpose of the statute had been fulfilled, and that any delay in providing notice was occasioned by good cause.

"[The Court of Appeals] review[s] the trial court's determination of good cause for abuse of discretion."

An abuse of discretion occurs when a trial court exercises its authority outside the boundaries of a statute or rule that provides for the admission of evidence. *State v. Rogers*, 330 Or 282, 310-12, 4 P3d 1261 (2000). In the context of OEC 803(18a)(b), "good cause" exists when there is good cause for *not giving* the notice. In context, the exception contemplates an explanation for why notice was not given within the time limit, not a *post hoc* rationalization for why it was not necessary to comply with the notice requirement at all. Here, the prosecutor in her remarks to the trial court offered no reason why she did not give timely notice; rather, she told the court that there was no need to give the required notice because she had already provided defense counsel with discovery of the out-of-court statements. That reasoning does not provide an explanation of why the state was unable to comply with the notice requirement; rather, it asks that the state be excused from the requirement because there was no surprise. If the legislature had intended for such a "no surprise" exception, it could have included such an exception in the statute. However, it did not do so. The only plausible understanding of the good cause exception in the rule is that the state may provide an explanation for why the time requirement could not be met in a particular case. Consequently, the state's argument fails.

Finally, the state argues that the admission of the victim's out-of-court statements was not prejudicial. Again, the state essentially relies on the proposition that defendant had discovery of all the evidence that was admitted in trial that was subject to the notice requirement of the rule long before trial. That argument also ignores the legislature's intent that OEC 803(18a)(b) operates as a requirement in addition to the obligation to provide discovery. Moreover, the state relied extensively on the evidence at trial. Defendant argued that he was not present when the abuse occurred. The state's evidence consisted, in part, of a victim's videotaped statement concerning defendant's abusive conduct. The prosecutor played the videotape at trial, thereby giving the jury a second opportunity to hear the victim's account and to evaluate her testimony in light of its consistency with the video.

Additionally, the tape was available to the jury during its deliberations. In closing argument, the prosecutor told the jury:

> "The other thing that you have to look at * * * not just draw on your memories of what [the victim] said, but you have the videotaped statement. You're going to have that back in the jury room. You'll have a TV and a VCR. You can play that again if you want to, to look at her body language, and I encourage you to look at her body language, evaluate her mannerism, and you tell me whether that girl is telling you what happened to her. I believe your conclusion is going to be yes, she was.

> "On the video you see emotions that are brought up in her, emotions that come out at appropriate times. I don't think she had any emotional ties with [defendant and codefendants], but she had some emotional showings when she was on that videotape talking about her mom. She talked about how her mom used to make cookies and teach her how to cook dinner, but that life isn't like that anymore, I think is what she said, 'My mom has changed since then,' is what she said on the videotape, and she got emotional. I mean if she was acting on the videotape, you have to give her an Academy Award. She drew upon her tears as she's discussing with Detective Doney what happened to her."

Although the victim testified at trial, we cannot say that there was little likelihood that the error in admitting the videotaped statement affected the verdict in light of the emphasis placed on the videotape by the prosecutor in the presentation of her case. Thus, we conclude that the erroneous admission of the victim's out-of-court statements was prejudicial.

We conclude for the above reasons that the error in admitting the evidence in violation of OEC 803(18a)(b) requires reversal of defendant's convictions.

Reversed and remanded for a new trial.

**KISTLER, J.,** dissenting.

Defendant was convicted of rape, sodomy, and unlawful sexual penetration for having sexual relations with a 13-year-old victim. The majority reverses defendant's convictions because the prosecutor did not "mak[e] known" to

defendant, 15 days before trial began, her intention to offer the victim's videotaped statement at trial. There is no dispute that the prosecutor did not say 15 days before trial began that she intended to offer the victim's videotaped statement in evidence. She had, however, provided the videotaped statement to defense counsel months earlier as part of discovery, and there was evidence from which the trial court could find that, in this case, the act of providing the videotaped statement to defense counsel was sufficient to make known to defendant the prosecutor's intention to offer the statement at trial. The majority's opinion forecloses the trial court from considering that factual issue on remand. Because I would permit the trial court to decide that issue, I respectfully dissent.

OEC 803(18a)(b) authorizes the admission of certain kinds of hearsay if "the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, except for good cause shown." In this case, the prosecutor did not say 15 days before trial began that she intended to offer the victim's videotaped statement, which she had provided to the defense months earlier. It follows that the initial question this case poses is whether the absence of a statement to that effect precludes the trial court from finding that the prosecutor had made her intention known. Put another way, the initial question is whether conduct alone can ever suffice to satisfy the terms of the rule. If, as I conclude, it can, the remaining question is whether, on this record, the trial court could find that the prosecutor had made her intention known.

The first question presents an issue of statutory interpretation, which is governed initially by the text and context of OEC 803(18a)(b). *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). Textually, OEC 803(18a)(b) does not require written notice; indeed, it does not require any particular type of notice. The rule focuses instead on a result: Has the proponent of a hearsay statement made his or her intention known to the adverse party to offer the statement at trial. By its terms, the rule is indifferent to the means by which that result is achieved. Written notice will suffice, as will verbal. But nothing in the text of the rule precludes the proponent from making his or

her intention known by nonverbal means. In the same way that the parties' agreement to enter into a contract may be communicated solely by conduct, *see Staley v. Taylor*, 165 Or App 256, 262, 994 P2d 1220 (2000),[1] so may the proponent's intention to offer particular statements at trial.

The context supports that conclusion. OEC 412(4)(a) requires a person who wants to introduce evidence of a victim's past sexual behavior to "make a written motion to offer the evidence not later than 15 days before the date on which the trial * * * is scheduled to begin[.]" When the legislature intends to require a particular form of notice, it knows how to say so. *See Gladhart v. Oregon Vineyard Supply Co.*, 332 Or 226, 233, 26 P3d 817 (2001); *Armstrong v. Rogue Federal Credit Union*, 328 Or 154, 160, 969 P2d 382 (1998); *State ex rel Hall v. Riggs*, 319 Or 282, 286-87, 877 P2d 56 (1994). It did not say so here. Moreover, OEC 803(18a)(b) is frequently employed in criminal cases, and the criminal discovery statutes require the state to provide books, papers, and documents that "the district attorney intends to offer in evidence at the trial[.]" ORS 135.815(1)(d)(A). If the state provided a defendant with discovery pursuant to this subsection, the mere act of providing discovery—without more—would be sufficient to make known the state's intention to offer the evidence at trial. The context makes clear what the text implies: In some instances, conduct alone can be sufficient to make the proponent's intention to offer the evidence known to the other party.[2]

---

[1] We explained in *Staley* that, "[i]n an implied-in-fact contract, the parties' agreement is inferred in whole or in part from their conduct." 165 Or App at 262. We noted:

" '[A]n implied contract can arise only where the natural and just interpretation of the parties warrants such a conclusion.' *Owen v. Bradley*, 231 Or 94, 103, 371 P2d 966 (1962). Frequently, implied-in-fact contracts arise because an accepted course of conduct would permit a reasonable juror to find that the parties understood that their acts were sufficient to manifest an agreement. *See Restatement (Second) of Contracts* § 4, comment a, illustrations 1 & 2 (1979)."

*Id.* at 262 n 6.

[2] The legislative history does not shed any light on this issue. In adding this rule to the evidence code, the legislature did not discuss how a litigant either may or must make his or her intention known to the other party. The legislative history does reveal that the relevant portion of Oregon's rule was modeled on Washington's rule, which in turn was modeled on the federal catch-all hearsay exception. *See* Minutes, Senate Judiciary Committee, SB 275, Feb 27, 1989, 4-5; *State v. Hughes*, 56 Wash App 172, 174, 783 P2d 99 (1989) (explaining the source of Washington's

I hasten to add that counsel would be well served to give their opponent written notice more than 15 days before trial begins both of their intention to offer a hearsay statement and of its "particulars." Written notice removes any doubt that counsel has complied with the terms of OEC 803(18a)(b). The question here, however, is not what is the best way to comply with the rule; rather, the question is what is the minimum that the rule requires in order to meet its terms. The text and context of the rule make clear that a trial court could find, in an appropriate case, that conduct alone was sufficient to make known to the adverse party the proponent's intention to offer the statement and its "particulars."

The remaining question is whether the record would permit the trial court to make that finding in this case. On that point, the majority has quoted almost the entire record in its opinion. It is helpful, however, to put the parties' colloquy in perspective. In this case, the victim's mother permitted three men to have sex with her 13-year-old daughter in order to obtain drugs. The state charged the men, one of whom was defendant, and the mother with various crimes. The charges against all four persons were joined for trial.

Approximately five months before trial, defendant's counsel moved for an order requiring the state to produce a videotape of the victim's statement. The affidavit in support

---

rule). The Oregon legislature, however, amended the relevant portion of the federal rule in one respect. The federal rule requires the proponent of the hearsay to make his or her intention to offer the statement known "sufficiently in advance of the trial or hearings to provide the adverse party with a fair opportunity to prepare to meet [the statement]" and it lacks a good cause exception. *See* FRE 807. As initially introduced, the Oregon bill tracked the federal rule. To make Oregon's rule more definite, the Senate Judiciary Committee amended the bill to require a proponent to make his or her intention known at least 15 days before trial and also added a good cause exception. *See* Tape Recording, Senate Judiciary Committee, SB 275, Feb 27, 1989, Tape 46, Side A (remarks of Senator Grensky), SB 275 A-Engrossed version (April 11, 1989). In construing the federal rule, the federal courts have focused on when the proponent's failure to make his or her intention known before trial may be excused and have in effect read a good cause exception into the rule. *See, e.g., Furtado v. Bishop*, 604 F2d 80, 92-93 (1st Cir 1979). The federal cases have not addressed the question presented here—whether conduct alone can ever suffice to make a proponent's intention to offer the evidence at trial known. Accordingly, even if we could look to federal court of appeals decisions interpreting FRE 807 to determine the Oregon legislature's intent, those decisions do not shed any light on this issue.

of the motion explained that counsel had learned from the police reports that the victim had been "interviewed regarding the allegations against defendant in this case, at Children's Advocacy Center on August 4, 1999 and that those interviews were video-taped." The affidavit also explained that it was necessary for the videotape to be provided to defense counsel "[i]n order to prepare an adequate defense for defendant * * *." The prosecutor did not oppose the motion provided that "defendant agrees to make no duplicate copies and agrees that the tapes will only be shown to those person[s] necessary for the preparation of defendant's defense." Defendant stipulated to those limitations, and the court granted the motion.

Fewer than 15 days before trial, the prosecutor filed a written notice of her intent to offer at trial the victim's videotaped statement that she had provided to the defendant approximately five months earlier.[3] Douglas Engle, counsel for defendant, and Carl Caplan, the counsel for another defendant, objected to the introduction of the victim's out-of-court statements.[4] In responding to those objections, the prosecutor mistakenly assumed that OEC 803(18a)(b) required written notice and agreed that her written notice was untimely. She argued, however, that she came within the good cause exception to OEC 803(18a)(b).

In the course of making that argument, the prosecutor represented to the court that she had provided the videotape to all the defense counsel months earlier and that, when she failed to file her written notice 15 days before trial, "[she] was getting phone calls from Mr. Engle [defendant's counsel] and Mr. Parker saying, 'You didn't file your notice.' So they all—they all knew that this was going to come in." The prosecutor added, "This is a case where they have known evidence—they have known about this evidence, they know

---

[3] In her written notice, the prosecutor stated that she intended to introduce the victim's statements contained in the videotape as well as the statements that were contained in other discovery. Because the majority holds only that the admission of the videotaped statement was not harmless error, I focus solely on the admission of that statement.

[4] In setting out the parties' colloquy, the majority refers to Engle as "defense counsel" and refers to the counsel for the other defendants by name.

that in all of these cases, the State is going to submit this evidence to the court in trial." The prosecutor concluded, "And I think that very clearly they know that—that the Advocacy Center takes these statements and that these statements are going to be offered by the State as evidence." Based on those representations, the prosecutor argued that she came within the good cause exception to the rule.

Engle, defendant's counsel, did not dispute the prosecutor's representations. He did not argue that he did not have the videotape long before trial began. He did not dispute that he called the prosecutor after the 15-day period had passed to tell her that she had missed the deadline. He did not disagree with the prosecutor's statement that all the defense counsel "knew that this [evidence] was going to come in," nor did he dispute her statement that he and the other defense counsel knew that "in all of these [child sex abuse] cases, the State is going to submit this [kind of] evidence to the court in trial." Finally, he did not dispute that he knew that the state typically offered statements taken by the child advocacy center.[5] Rather, Engle's sole response to the prosecutor's representations was to assume that they were true but argue that his knowledge of her intention to offer the evidence did not constitute good cause. The trial court rejected Engle's argument and admitted the evidence under the good cause exception.

I agree with the majority, and also with defendant, that the good cause exception does not apply in this case and that the trial court erred in denying defendant's objection on that ground. However, I do not agree with the majority that the trial court could not find on remand that the act of providing the videotape to defense counsel made the prosecutor's intention to offer that evidence at trial known.[6] Three pieces of evidence, considered together, support that conclusion.

---

[5] Caplan, the attorney for another defendant, may have disputed the factual premise of the prosecutor's statements, but Engle never did.

[6] The majority suggests that the prosecutor's failure to argue this theory below precludes our consideration of it. 186 Or App at 391-92. The state, however, prevailed below and can advance new reasons on appeal for upholding the trial court's ruling. If, as I conclude, there is evidence from which the trial court could find that the prosecutor had complied with OEC 803(18a)(b), judicial economy counsels that we should permit the trial court to decide that issue on remand and potentially bring this case to its conclusion. We need not automatically remand the case for a new trial.

First, the prosecutor represented that all the defense counsel "know that—that the Advocacy Center takes these statements and that these statements are going to be offered by the State as evidence." Similarly, the prosecutor represented that the defense counsel "know in all of these [child sex abuse] cases, the State is going to submit this [kind of] evidence to the court in trial." The trial court reasonably could infer from these representations that, when there is an allegation of sexual abuse, the Children's Advocacy Center interviews the alleged victims and that it is the district attorney's practice to introduce the resulting interviews in child sex abuse trials. The trial court reasonably could find that, in light of that practice, the act of providing the victim's videotaped statement to the defense in discovery was sufficient to make known to defendant the state's intention to offer that evidence at trial. The trial court of course need not draw that inference, but the inference is a permissible one.

Second, the prosecutor represented, and defendant's counsel did not dispute, that when she failed to file her written notice 15 days before trial, she began to get calls from defendant's counsel and counsel for another defendant saying, "You didn't file your notice." The trial court could reasonably infer from defense counsel's calls to tell her that she had missed the deadline that he was aware that the prosecutor had intended to introduce the videotape but was now barred from doing so. Why else would he have called to tell her that she could not introduce the victim's videotaped statement unless he had been aware all along that that had been her intent? It may be that the trial court could draw a different inference. But it could also find from those calls that the act of providing the videotape in discovery had made known to defendant the state's intention to offer that evidence at trial.

Were there any doubt about the correct inference to be drawn from defense counsel's calls, the prosecutor's next statement removes it. After explaining that she began getting the calls when she failed to file a written motion 15 days before trial, the prosecutor added, "So they all—they all knew that this [evidence] was going to come in." Defendant's counsel did not dispute that statement. The trial court could reasonably infer from counsel's silence that he agreed with the prosecutor—after having received the videotape in discovery, he "knew that this [evidence] was going to come in." If

that were the trial court's finding, then the terms of OEC 803(18a)(b) would be satisfied.

The third consideration is not as significant as the first two, but it supports the conclusion that the prosecutor's intention to offer the evidence was clear. Defendant filed a motion five months before trial to require the prosecutor to provide him with the victim's videotaped statement, and the prosecutor agreed to do so subject to certain conditions. Defendant did not cite any authority for his motion, but ORS 135.815(1)(a) is the only apparent source of authority. That portion of the criminal discovery statutes requires district attorneys to disclose the "names and addresses of persons whom the district attorney intends to call as witnesses at any stage of the trial, together with their relevant written or recorded statements * * *." As the statute makes clear, defendant was entitled to discover the victim's videotaped statement solely because it was relevant to her testimony at trial—a proposition defendant's affidavit in support of the motion confirmed.

ORS 135.815(1)(a) makes clear that the victim's videotaped statement was integral to the testimony of a witness whom the prosecutor intended to call at trial—the victim. That fact, combined with the district attorney's practice of introducing statements taken by the Children's Advocacy Center in child sex abuse cases, defendant's counsel's calls to the prosecutor, and his acquiescence in the prosecutor's assertion that he knew that this evidence was going to come in, are more than sufficient to permit the trial court to find that, on the facts of this case, the act of providing the victim's videotaped statement to defense counsel made known to defendant that the prosecutor intended to offer that evidence at trial. The majority errs in sending this case back for a new trial. We should remand this case to permit the trial court to decide first whether the prosecutor made known to defendant her intention to offer the victim's videotaped statement at trial. If she did, a new trial would not be necessary.

I respectfully dissent.

Deits, C. J., and Linder, J., join in this dissent.