Argued and submitted February 27, judgment vacated; remanded for further proceedings July 30, 2003

In the Matter of
Luke A. Sauer, a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF UNION COUNTY,
*Respondent,*

*v.*

LUKE A. SAUER,
*Appellant.*

3957J; A116349

73 P3d 293

Kent A. Anderson argued the cause and filed the brief for appellant.

Kaye E. McDonald, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

The juvenile court found youth to be within its jurisdiction for committing acts that, if committed by an adult, would constitute sex abuse in the first degree (two counts) and sodomy in the first degree (one count). The court placed youth, who was 12 years old at the time of the alleged offenses, in the legal custody of the Oregon Youth Authority for a period to expire no later than his twenty-fifth birthday, and it recommended placement in a youth correctional facility. The court based its finding on evidence that included hearsay statements by the alleged victim, a three-year-old with the developmental level of a two-year-old. The dispositive issue is whether the hearsay statements should have been admitted despite the fact that the state did not notify youth of its "intention to offer the statement and the particulars of the statement no later than 15 days before trial[.]" OEC 803(18a)(b). We conclude that the evidence should not have been admitted. Because the state could have made alternative arguments for its admission if the trial court had properly excluded the disputed evidence under OEC 803(18a)(b), we vacate the judgment finding that youth is within the court's jurisdiction and remand for further proceedings.

In May 2001, C's mother found C, a three-year-old boy, in the closet of his bedroom inserting his erect penis into a hole in the side of a cardboard box. She did not say anything to him at the time, but the next day she and her mother asked C about this conduct. According to their testimony, C told them that youth had made the hole in the box and had showed C how to use it; C also told them that youth had put his penis in C's mouth. C's mother contacted the police and the local State Office for Services to Children and Families (SCF), then arranged to take C for an examination at the Mt. Emily Safe Center.

At Mt. Emily, C was given a physical exam by Lynne Dretke, a nurse practitioner. A forensic interviewer, Lee Adams, observed the exam and later interviewed C. Both Dretke and Adams were informed before the exam of C's statements regarding youth and of the following facts as well:

that C had recently been having nightmares, wetting himself (after having completed toilet training), and acting aggressively.

According to Dretke's testimony, the physical exam of C proceeded from head to toe, not focusing particularly on the genitals. She began by asking C, "has anybody ever pulled on your hair, has anybody ever pulled on your ears," and similar questions. C's only response was youth's name. When asked if anyone had ever touched him "on the private part," he again gave only youth's name. When asked, "does anybody else" touch him on a particular body part, he responded only with youth's name. He did not name his mother or grandmother as ever having touched him, nor did he name any other children. Dretke regarded the exam as unproductive, noting that C seemed to be fixated on youth's name. There were no abnormal physical findings during the examination, nor would any be expected to result from the kind of abuse C described.

Dretke testified that as she dressed C after the exam, he "spontaneously * * * said * * * [youth] had touched my wee wee and that was his word to describe the penis." She then asked, "[W]hat else did [youth] do?" and C responded, "[Youth] touched my * * * wee wee with his mouth." Dretke asked, "[W]hat about you? Have you ever touched anybody's wee wee?" She testified that C named youth. When asked how he had touched youth's "wee wee," C reportedly responded with an up-and-down motion of his hand as though he were gripping a penis.

After the physical examination, Adams interviewed C pursuant to Mt. Emily's standard protocol designed to "address[ ] questions [of] who, what, when, where, and how to determine if a crime has been committed against a child * * *." The interview was videotaped. Adams testified that she did not tell C what the subject of the interview was going to be because doing so could "lead" the child. Dretke, however, did tell C before the interview, "[Adams is] gonna be talking to you. Remember what you told me about [youth]? Okay, and how we keep on asking questions about [youth], okay?"

During the interview as related by Adams, C disclosed that youth "put his weenie, [youth's] weenie in the hole in the box. Then he talked about putting his mouth on [youth's] penis and the wee wee * * * [a]nd he demonstrated with his mouth." Regarding C's ability to provide specific descriptive or sensory details, Adams said that C "was not able to do any specific information on before and after." C was also not able to demonstrate the abuse using anatomically correct dolls. Further, at one point in the interview, C made a spontaneous statement about youth having a gun. Adams explained that C "said [youth] got the gun at home and he said that [youth] pointed the gun at him," shot it, and that there was blood. That incident did not occur.

Thus, at the time of trial, four people—C's mother, his grandmother, Dretke and Adams—were prepared to offer hearsay testimony regarding statements by C implicating youth. The trial court found C to be "unavailable to testify," thereby triggering the hearsay exception set out in OEC 803(18a)(b):

"A statement made by a person concerning an act of abuse [such as the ones youth was accused of] is not excluded * * * if the declarant * * * is unavailable as a witness but was chronologically or mentally under 12 years of age when the statement was made * * *. However, if a declarant is unavailable, the statement may be admitted in evidence only if the proponent establishes that the time, content and circumstances of the statement provide indicia of reliability, and in a criminal trial that there is corroborative evidence of the act of abuse and of the alleged perpetrator's opportunity to participate in the conduct and that the statement possesses indicia of reliability as is constitutionally required to be admitted. No statement may be admitted under this paragraph unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, except for good cause shown."

Over youth's objections, the trial court concluded that, even though the state did not meet its obligation to provide notice of its intention to offer the statement and of its particulars 15 days before trial—a fact the state does not contest—the evidence was admissible nonetheless because the state's failure

was for "good cause shown." Further, the court concluded that the statements were sufficiently reliable and adequately corroborated. Consequently, all of the testimony containing C's hearsay statements was admitted.

The state also sought to introduce a videotape of Adams's interview with C under the hearsay exception for statements made for the purpose of medical treatment or diagnosis, OEC 803(4), but the trial court rejected that request on the ground that the interview would be cumulative. However, after the defense rested, *youth* sought introduction of the videotape in order to show inconsistencies between the interview recorded on tape and Adams's account of it. The trial court allowed the tape to be played. The court ultimately found youth to have committed three of the acts of which he was accused.

Youth appeals, assigning error to the court's ruling that the 15-day notice requirement did not require exclusion of the hearsay testimony. He alternatively assigns error to the admission of the same testimony on the ground that the statements lack sufficient indicia of reliability and corroboration. Because we agree with youth that admitting the hearsay testimony violated the 15-day notice requirement under OEC 803(18a)(b), and that it should therefore have been excluded under that rule, we need not decide whether it should also have been excluded for lack of reliability or corroboration.[1]

The state concedes that it provided notice of its intent to rely on C's hearsay statements only 10 days before trial, but it contends that its failure to meet the statutory deadline qualifies for the "good cause shown" exception to OEC 803(18a)(b):

"No statement may be admitted under this paragraph unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, *except for good cause shown.*"

---

[1] Youth also argues that, even if all the hearsay evidence is admissible, it is nonetheless insufficient to establish beyond a reasonable doubt that he committed the acts of which he was accused. We reject that argument without discussion.

(Emphasis added.) First, the state argues that the exception means that the trial court has discretion to admit the evidence if there is *good cause shown* to admit it, that is, if the evidence is highly probative, extremely reliable, or is unusually valuable for some other reason. After the parties completed briefing this case, however, we rejected an identical contention in *State v. McKinzie*, 186 Or App 384, 395, 63 P3d 1214 (2003), holding that, "[i]n the context of OEC 803(18a)(b), 'good cause' exists when there is good cause for *not giving* the notice."[2] (Emphasis in original.) Second, the state contends that admitting the evidence, if it was error at all, was harmless error, because well in advance of the 15-day deadline, the state had already provided youth with discovery of all the statements that the state intended to introduce, and youth admitted at the start of the trial that he was prepared to proceed. That argument too was answered in *McKinzie* and in *State v. Iverson*, 185 Or App 9, 57 P3d 953 (2002), another case decided after the briefing in this case was complete. We explained that, according to the terms of the statute, the sanction for lack of notice is that "no statement may be admitted * * *." OEC 803(18a)(b). Therefore, we held, the question is not whether the delay caused harm but whether the admitted evidence did. *McKinzie*, 186 Or App at 395; *Iverson*, 185 Or App at 15-16.

Third, the state argues that, even if the focus of the harmless error analysis is the evidence and not the delay, the evidence did not in fact cause harm because all of the facts to which the four hearsay witnesses testified were also contained in the videotaped interview, which was properly admitted on behalf of youth.

On *de novo* review, ORS 419A.200(6)(b), we will affirm the trial court's ruling despite erroneously admitted evidence only if we are convinced that the properly admitted evidence establishes the acts in the petition beyond a reasonable doubt. *See State ex rel Juv. Dept. v. Thai / Schmolling*, 138 Or App 354, 359, 908 P2d 844 (1995). Ordinarily, we

---

[2] The state maintains that, even if "good cause" refers to the delay and not to the evidence, it should still prevail on this point because it *had* good cause for delay: settlement negotiations were ongoing. However, the record indicates that those negotiations ended 21 days before trial.

would conduct that review ourselves on the record before the trial court. In the present case, we decline to do that for two reasons. First, because the trial court rejected youth's objection based on OEC 803(18a)(b), the state made no attempt to argue in favor of admission on alternate grounds, in particular (as the state points out on appeal) OEC 803(18a)(a), the hearsay exception under which the fact of a complaint of sexual abuse is admissible, or OEC 803(4), an exception for "statements made for purposes of medical diagnosis or treatment." Thus, "if we review the record before us without the [hearsay evidence], we will be reviewing a record that may have been different if the trial court had ruled correctly on youth's motion" under OEC 803(18a)(b). *State ex rel Juv. Dept. v. Castellano*, 178 Or App 251, 259, 35 P3d 1144 (2001).

Second, the admissible evidence at this time consists almost entirely of the videotape. That tape is not in the record.[3] The trial transcript contains the audio portion, but it has such frequent "inaudible" sections as to seriously undermine its usefulness. In sum, on the current state of the trial court record, we are unable to conduct meaningful *de novo* review.

■ In order to aid the trial court and the parties in further proceedings, we make the following observation. *See Iverson*, 185 Or App at 16 (addressing unreached assignment of error involving issue that might arise on retrial). The trial court made several findings regarding the reliability of and corroboration for C's hearsay. Some of those findings involved other hearsay statements. We note that one hearsay statement cannot be used to provide corroboration for or indicate the reliability of other hearsay statements; the legislature clearly intended that a defendant not be convicted (or a juvenile found to be within the juvenile court's jurisdiction)

---

[3] The appellate court file contains a letter from the Union County Circuit Court Administrator's office to the State Court Administrator indicating that, in response to a request from this court, the circuit court attempted unsuccessfully to locate the videotape by searching its records and making inquiries to all counsel involved in this case. "Each has claimed they do not have this exhibit. The DA's office informed me that they would have given it to Juvenile Dept.—upon calling the Juvenile Dept., they stated emphatically that they never receive exhibits and that, indeed, the DA's office would have this exhibit, or at very least, have access to this exhibit."

on hearsay alone. *State v. Renly*, 111 Or App 453, 465-66, 827 P2d 1345 (1992).

Judgment vacated; remanded for further proceedings.