Argued and submitted May 19, reversed and remanded August 25, 2004

## STATE OF OREGON,
*Respondent,*

*v.*

## LEO ALVA SMITH,
*Appellant.*

## C001440CR; A115538

96 P3d 1234

Andrew S. Chilton argued the cause for appellant. With him on the brief was Chilton & Ebbett, LLC.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

Defendant appeals his conviction for first-degree sexual abuse. In his sole assignment of error, defendant asserts that the trial court erred in excluding on hearsay grounds defendant's proffered testimony that his father told him that a police officer had told his father that defendant's parents would lose their home if defendant contested the charges in this case. Defendant asserts that both statements included in the proffer were relevant for a nonhearsay purpose, namely, to show that defendant had a motive to confess falsely to one of the crimes with which he was charged. We reverse and remand.

Defendant was charged with first-degree rape and first-degree sexual abuse of his then five-year-old niece. Detective Stratford investigated the case. After defendant was arrested, Stratford interviewed him. Defendant admitted to Stratford that he had digitally penetrated the victim's vagina. Before trial, defendant moved to suppress his statement. Defendant testified at the pretrial hearing that Stratford had told him that, if defendant fought the charges against him, defendant's parents would lose their home. The trial court denied the motion to suppress.[1]

Defendant's primary defense at trial was to attack the credibility of his statement to Stratford. In her opening statement, defendant's attorney told the jury that Stratford had threatened defendant with the loss of his parents' home if defendant fought the charges. During her cross-examination of Stratford, defense counsel asked Stratford whether he had asked defendant if "he wanted his parents to lose their house." Stratford denied asking such a question.

In his own case-in-chief, defendant called his father as a witness. Defendant's father testified briefly and generally about defendant's relationship with the victim and her family. Defendant's counsel did not ask defendant's father whether Stratford had ever stated to *the father* that defendant's parents would lose their home if defendant contested the charges, nor whether he had told defendant that the

---

[1] Defendant does not assign error to that ruling.

detective had made such a threat. After his testimony ended, defendant's father was released as a witness and remained in the courtroom.

Defendant testified on his own behalf the next day. Defendant testified that, when he made the incriminating statement to Stratford, he believed that he would be convicted no matter what he said. Defendant also testified that he believed that, by making the statement, he would get a shorter sentence and spare the victim, himself, and his family the pain of having to try the case.

During direct examination of defendant, the following colloquy occurred:

"[DEFENSE COUNSEL]: Well, did Detective Stratford ever try to call you?

"[DEFENDANT]: Yeah, he called. My dad accepted the call, and my dad would tell me that he'd called, and I said that I didn't want to talk to him.

"[DEFENSE COUNSEL]: Why didn't you want to talk to him?

"[DEFENDANT]: Because he was a detective and he scared me, so —

"[DEFENSE COUNSEL]: Did the detective ever say anything about your parents' house?

"[DEFENDANT]: He had told my father — my father told me that he had told him on the phone —

"[PROSECUTOR]: Objection, hearsay.

"THE COURT: Sustained.

"[DEFENSE COUNSEL]: May I approach, Your Honor?

"THE COURT: Counsel?

"* * * * *

"THE COURT: We're talking about a situation here of double hearsay. This isn't even a statement from the officer to the defendant. It's apparently a statement that was relayed to the defendant's father that was then relayed to the defendant. And at some point, I mean, it kind of gets into the category of 'Well, you know, I heard from somebody

somewhere at some time that such and such could happen to you.'

"[DEFENSE COUNSEL]: And were it being offered for the truth of the matter asserted, I would agree, Your Honor. But the reason I was offering it—and perhaps I can narrow the issue a bit. The reason I'm offering it was the effect it had on my client's state of mind when he talked to the detective."

There ensued a colloquy about whether defendant's father could be recalled to allay the court's foundational concerns. The court then reiterated its concern about the lack of foundation for the purported statement to defendant's father:

"THE COURT: The problem with that is if the statement wasn't made, it can't have any effect on your client.

"[DEFENSE COUNSEL]: The fact that my client believes the statement was made does have an effect on him.

"THE COURT: Well, I want to have at least some assurance that the statement was made, by at least the person who spoke to your client about that before I'm going to allow it particularly when we're talking about double hearsay. If it was something that was said to him by the officer, then—directly to him, I don't think we'd have that problem, because he could testify as to what the officer said. But, you know, saying that his father told him that somebody else told him something, you know, we get to a point where there is some kind of prejudicial impact to the State in terms of their case, in the sense that the statement may never have been made."

The court ruled that defendant's father could not be recalled as a witness to testify concerning Stratford's alleged statement to him because defendant's father had been released as a witness and had attended the trial ever since. The court then made its final ruling on the disputed evidentiary issue:

"THE COURT: Okay. I'm not allowing the question as to [defendant's father]—

"[PROSECUTOR]: Yes, Your Honor.

"THE COURT: —that [defendant's father] may have told this witness about what the officer may have said.

"I note for the record a couple of things. First of all, [defendant's father] was called to testify yesterday and was not asked whether he made a statement like this.

"Secondly, this is the kind of statement that obviously, it has a prejudicial impact in terms of the State's case as to whether or not, in fact, it was made. And I think that even though it's not offered to prove the truth of the matter asserted, there has to be some guarantee that the officer made the statement to [defendant's father] and that it was then accurately relayed to this defendant in terms of offering it, even for the purpose of what effect it may have upon him. That foundation hasn't been properly laid. And [defendant's father] is now in the courtroom, has heard the statement, and has been released as a witness. And for that reason, the court declines to allow this line of questioning."

The jury ultimately acquitted defendant on the rape charge but convicted him of first-degree sexual abuse.

■ On appeal, defendant does not challenge the trial court's ruling that his father could not be recalled as a witness to lay a foundation for the statement that Stratford allegedly made to him. Rather, defendant's sole contention is that the trial court erred in excluding his own testimony concerning that statement on hearsay grounds. We review determinations of whether evidence qualifies for admission for errors of law. *State v. Arellano*, 149 Or App 86, 90, 941 P2d 1089 (1997), *rev dismissed*, 327 Or 555 (1998).

■ The state initially asserts that defendant did not preserve the asserted error before the trial court because he did not make an adequate offer of proof. The state notes that, as shown by the colloquy quoted above, defendant never testified, nor did his counsel make a representation to the court, as to the substance of his father's statement. According to the state, that omission was fatal. We disagree. The Supreme Court has stated, "One method of making an offer of proof is by question and answer. It also is acceptable, however, for a party's counsel to state what the proposed evidence is expected to be." *State v. Phillips*, 314 Or 460, 466, 840 P2d 666 (1992) (citing *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988)). Moreover, OEC 103(1)(b) provides that error may be predicated on a ruling excluding evidence if the substance of the evidence "was made known to the court by offer

or *was apparent from the context within which questions were asked.*" (Emphasis added.)

■    Here, it is apparent from the colloquy between the trial court and defendant's counsel quoted above that the court understood, from the context of the question asked, that defendant would testify that his father told him that Stratford had told defendant's father that he would lose his house if defendant contested the charges. In making its ruling, the court twice referred to "a statement like this," first in correctly observing that defendant's father had not testified about the statement and, second, in commenting on the "prejudicial impact" of the statement "in terms of the State's case as to whether or not, in fact, it was made." Moreover, the question that provoked the answer to which the prosecutor objected was whether the detective ever had said anything about his parents' house. When defendant answered that question by referring to a statement by his father, it was obvious that he was about to testify to a statement by the detective concerning his parents' house that his father had relayed to him. Under the circumstances, defendant was not required to do more to preserve his claim of error when the court foreclosed that line of inquiry. Accordingly, we turn to the merits.

■    Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 801(3). Hearsay is not admissible unless its admission is authorized by an exception to the rule against hearsay. OEC 802. Where, as here, a proponent offers testimony in which the witness quotes one out-of-court declarant who in turn quotes another out-of-court declarant, each of the multilevel statements must satisfy a hearsay exception or be categorized as not hearsay. *State v. Taylor,* 137 Or App 286, 289 n 1, 904 P2d 191 (1995).[2]

---

[2] OEC 805 provides that "[h]earsay included within hearsay is not excluded under [Rule 802] if each part of the combined statements conforms with an exception set forth in [Rule 803 or 804]."

By its terms, that rule applies only to "hearsay included within hearsay" that falls within an exception to the rule against hearsay. Here, defendant relies on an exclusion from the definition of hearsay, not an exception to the rule. Thus, OEC 805 is not directly applicable to the present problem. However, the actuating principle behind OEC 805 is equally applicable to combined statements that the proponent contends are not hearsay. In either case, logic holds that each of two or more

■ Out-of-court statements that are relevant to prove their effect on the person who heard them are not hearsay. *State v. Thomas,* 167 Or App 80, 84, 1 P3d 1058 (2000). Defendant argues that the two out-of-court statements contained in the excluded testimony were not hearsay because each was offered only to show its effect on defendant's state of mind when he later confessed to Stratford. Here, the trial court's ruling did not preclude defendant from testifying that his father told him that, if defendant contested the charges, his parents would lose their home. Instead, the court's ruling prevented defendant from testifying that his father told him that the detective made the "lose the home" threat to defendant's father. Thus, only the more remote of the two statements is at issue on appeal.

It is important to note at the outset that, in offering the remote statement, defendant was not challenging the voluntariness of his confession. If defendant had offered the statement to show that his confession was coerced or otherwise involuntary, it would have been necessary to establish as a foundation for its admission that the officer had, in fact, made the statement. In the absence of such a foundation, defendant's testimony about the statement would have been hearsay. However, defendant did not offer the statement for that purpose. Instead, he offered it to show that he had a particularly strong motive, based on the attribution of the threat to a credible source, to confess falsely in order to protect his parents' home.

■ Admittedly, there is some logical tension in that rationale. The purpose of showing that the threat was credible and, thus, had a greater effect on defendant than if it had come from a less authoritative source, bears resemblance to an offer for the truth that the threat was made. However, the distinction between those purposes nevertheless is valid. To illustrate, even if defendant's father had testified at trial that he had lied to defendant about the detective making the threat, evidence that he had told defendant that the detective made the threat nevertheless would be relevant to show its

---

combined statements must satisfy an exception or be excluded from the rule against hearsay. *See Hansen v. Abrasive Engineering and Manufacturing,* 317 Or 378, 389 n 7, 856 P2d 625 (1993) ("The language of OEC 805 should be read to embrace statements in the chain that qualify as 'not hearsay' under OEC 801(4).").

effect on defendant. Thus, evidence of the remote statement was offered only to show that defendant believed that the threat originated from a credible source. For that purpose, it is immaterial whether the detective actually made the statement to defendant's father or whether, if made, the statement was true. Accordingly, for the purpose offered, the remote statement was not hearsay.

■ ■    The state nonetheless asserts that the trial court properly excluded the statement on the ground that its relevance was substantially outweighed by the danger of unfair prejudice to the state. OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

"In the context of OEC 403, 'unfair prejudice' means 'an undue tendency to suggest decisions on an improper basis, commonly although not always an emotional one.'" *State v. Moore*, 324 Or 396, 407-08, 927 P2d 1073 (1996) (quoting Legislative Commentary, cited in Laird C. Kirkpatrick, *Oregon Evidence*, 125 (2d ed 1989). We review a trial court's decision under OEC 403 for an abuse of discretion. *Id.* at 407.

After reviewing the record, we do not agree with the state's characterization of the trial court's rulings. The court stated that the evidence "has a prejudicial impact in terms of the state's case as to whether or not, in fact, it was made." However, the court never ruled that defendant's proffered evidence was "unfairly prejudicial," nor did it rule that the evidence ought to be excluded under OEC 403. Further, the court's focus on the relevance of the evidence for its truth demonstrates that the court was more concerned about that issue than whether it should exclude the evidence based on a consideration set out in OEC 403. We will not speculate about how the trial court could have exercised its discretion under OEC 403 if it had chosen to do so. *State v. Davis*, 336 Or 19, 27, 77 P3d 1111 (2003); *see also Macy v. Blatchford*, 330 Or 444, 455, 8 P3d 204 (2000) (disagreeing that trial court made OEC 403 ruling when court did not do so

expressly, although it labeled evidence as "highly inflamma-
tory" and "prejudicial"). Because the evidence was not hear-
say and because the trial court did not exclude it as unfairly
prejudicial under OEC 403, its exclusion was error.

■ Finally, we turn to the state's argument that the
exclusion of the evidence, if error, was harmless. In *Davis*,
the Supreme Court clarified the standard we must apply to
determine whether the erroneous admission or exclusion of
evidence affected a criminal defendant's substantial rights:

> "Oregon's constitutional test for affirmance despite error
> consists of a single inquiry: Is there little likelihood that the
> particular error affected the verdict? The correct focus of
> the inquiry regarding affirmance despite error is on the pos-
> sible influence of the error on the verdict rendered, not
> whether this court, sitting as a fact-finder, would regard the
> evidence of guilt as substantial and compelling."

*Davis*, 336 Or at 32.

The state asserts that the excluded evidence marked
the latest shift in a weak defense strategy to counter the
effect of defendant's confession. As discussed, in his opening
statement, defendant asserted that the evidence would show
that the "lose the home" threat was directly made by the
detective to defendant, rather than through defendant's
father. Moreover, for unknown reasons, defendant failed to
examine his father about the alleged threat during his
father's testimony. In short, the excluded evidence was vul-
nerable to counterattack by the state.

■ However, two factors militate against a conclusion
that the exclusion of the evidence was harmless. First, the
trial centered on a credibility dispute between defendant and
the alleged victim. The jury returned a split verdict, convict-
ing defendant of the charge to which he confessed, first-
degree sexual abuse, but not rape, the charge to which he did
not confess. Thus, defendant's confession may have been piv-
otal to the jury's decision to convict him. For that reason,
blunting the effect of the confession was essential, and defen-
dant's false confession theory was central to his defense
strategy.

Second, because it suggested the existence of a legitimate threat to defendant's parents' welfare if he chose to contest the charges, the excluded evidence provided defendant with an explanation as to why he might have falsely confessed. Although the jury certainly could have disbelieved that explanation, it also might have afforded him his best chance for acquittal. Under the circumstances, we cannot say that there is little likelihood that the exclusion of the evidence affected the outcome of the case.

Reversed and remanded.