Argued and submitted February 16, 2005, reversed and remanded June 14, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# FIDEL DEJESUS TORRES,
*Appellant.*

## C020546CR; A118463

136 P3d 1132

Patrick M. Ebbett argued the cause for appellant. With him on the briefs was Chilton, Ebbett & Rohr, LLC.

Christina M. Hutchins, Assistant Attorney General, argued the cause for respondent. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim and Schuman,* Judges.

WOLLHEIM, J.

* Schuman, J., *vice* Ceniceros, S. J.

## WOLLHEIM, J.

Following a jury trial, defendant was convicted of fourth-degree assault, ORS 163.160, and menacing, ORS 163.190, both stemming from an alleged domestic violence incident involving his fiancée. On appeal, defendant assigns error to the trial court's admission of out-of-court statements from the alleged victim and her seven-year-old son. For the reasons explained below, we reverse defendant's convictions and remand for a new trial.

In recounting the factual background, we view the evidence in the light most favorable to the state. *See State v. Gibson*, 338 Or 560, 562, 113 P3d 423, *cert den*, ____ US ____, 126 S Ct 760 (2005). Defendant engaged in a protracted altercation with Rios, his pregnant fiancée, after Rios had locked the door of their apartment with the keys inside. Rios did not testify at trial, but her account of events was related at trial by Officer Mehl, a police officer who, along with his partner, responded to the scene. According to Mehl, defendant broke the door handle while regaining entry to the apartment, and he then abrasively ordered Rios around the apartment over the next few hours. Defendant became increasingly upset when Rios tried to talk to him about what had happened and, as the argument progressed, Rios picked up a CD rack in anticipation of needing to defend herself. The three children were told to go to their room upstairs. Defendant closed the shades in the living room, turned out the lights, grabbed a "shiny object" from the kitchen, and orally threatened to stab Rios. With the cover of darkness, defendant moved behind Rios, jumped on top of her, and began to choke her. Rios, beginning to get dizzy and believing that defendant was going to kill her, bit down on defendant's hand. The two struggled on the ground. Defendant finally pinned Rios with his knee and punched her in the face.

Defendant emerged with a bitten and bloodied hand, Rios with a bruised and bloodied face. Rios's three children fled to the nearby apartment of Teresa Perez, Rios's aunt. Perez testified at trial that she had heard children crying and, as she was walking to her living room, Rios's children came in and told her that defendant was hitting their mother.

Rios soon joined her children at Perez's apartment, saying that defendant was trying to kill her or that he had hit her. Defendant fled the scene in the couple's car. Perez called the police, who arrived and interviewed Perez and Rios's seven-year-old son, J. Mehl testified that, on his arrival at Perez's apartment, Rios was crying, rocking back and forth on a couch, and stating, to no one in particular, "I thought he was going to kill me. I couldn't breathe." Rios was then taken to the hospital for treatment. Defendant was arrested later that evening at the apartment of his relative.

Officer Soliz took a statement from J who, like his mother, did not testify at trial. Soliz testified:

"He told me that he had saw [defendant] and Olivia Rios, his mother, fighting, arguing in the living room. At one point, [defendant] had told [J] and his two brothers * * * to go to their bedroom while they were arguing.

"[J] told me that while [defendant] and [Rios] were fighting, [defendant] had thrown a computer down on the ground and told her to, quote, pick it up before I give it away to my sister. [J] then told me that [defendant] then grabbed a screwdriver and began chasing Olivia Rios around the apartment, and at one point [defendant] told Olivia to, quote, sit down or I will stab you.

"After that, [J] told me that [defendant] then stabbed his mother in the face with a screwdriver. [J] then said that he took his two brothers and left the apartment and went to their—to the next door apartment * * *."

Mehl and Soliz then went to the hospital to interview Rios. There, Rios provided a statement incriminating defendant as the aggressor, as summarized above. Rios also gave a similar statement to medical personnel.

Approximately one month later, Rios provided a substantially different statement to an investigator employed by defendant's counsel. According to the investigator's testimony, Rios said that the altercation had begun with an argument, the subject of which she could not recall, that when defendant attempted to leave the apartment Rios had grabbed defendant's hand and bit his finger, and that defendant had hit Rios to make her let go.

Trial was set for April 11, 2002. On April 9, the state filed notice of its intent to offer hearsay statements under OEC 803(18a)(b), which provides for admission of hearsay statements concerning an act of abuse. Attached to the notice was an affidavit in which the prosecutor averred that "the state expects [Rios and J] to testify at defendant's trial."

On the day set for trial, the court held an evidentiary hearing on the state's motion. By that time, however, it appeared that Rios would not testify because she had not been served with a subpoena and was not present at court. Although J had been served the evening before, he was not present at court. Accordingly, the state sought to establish that neither witness was available and that the statements they had made to police officers should be admitted under exceptions to the general rule prohibiting the admission of hearsay.

The state offered Rios's and J's statements under a number of statutory exceptions to the rule against hearsay. It offered Rios's statements to investigating police officers as excited utterances, OEC 803(2),[1] and as statements regarding domestic violence, OEC 803(26)(a).[2] In addition, it offered into evidence Rios's statement to medical personnel under the hearsay exception for statements given to secure medical diagnosis or treatment, OEC 803(4).[3] The state also offered J's statement as a statement regarding abuse, OEC 803(18a)(b).[4] Following the hearing, the trial court admitted

---

[1] OEC 803(2) provides an exception to the rule excluding hearsay for "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

[2] OEC 803(26)(a) provides an exception to the rule excluding hearsay for

"[a] statement that purports to narrate, describe, report or explain an incident of domestic violence * * * made by a victim of the domestic violence within 24 hours after the incident occurred, if the statement:

"(A) Was recorded * * * or was made to a peace officer * * * and

"(B) Has sufficient indicia of reliability * * *."

[3] OEC 803(4) provides an exception to the rule excluding hearsay for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof as reasonably pertinent to diagnosis or treatment."

[4] OEC 803(18a)(b) provides an exception to the rule excluding hearsay for, *inter alia,*

the statements, finding that the witnesses were unavailable and that the proffered statements otherwise fell within exceptions to the rule against admission of hearsay. In light of the result of the pretrial hearing, the parties and court agreed to postpone the trial for a week, until April 16.

At trial, Mehl and Soliz testified to statements made by Rios and J. As noted, defendant ultimately was convicted of two counts of felony fourth-degree assault and one count of menacing.

■ On appeal, defendant renews his position that the trial court erred in admitting the hearsay. He makes three assignments of error that contain essentially two arguments. First, he asserts, the trial court erred in finding that Rios and J were unavailable to testify. Second, he claims, the trial court erred in finding that the state established good cause for failing to give 15 days' notice of its intent to offer J's statement under OEC 803(18a)(b). In addition, in a supplemental brief, defendant claims that admission of the hearsay statements violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution, as interpreted in *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), decided after the trial in this case. Because we agree that the state did not show good cause for its late filing of the notice required under OEC 806(18a)(b), and because the trial court's erroneous admission of J's hearsay statement was not harmless, we reverse and remand. Because we reverse on that ground, we do not address defendant's other arguments further.

OEC 803(18a)(b) provides, in part:

"[a] statement made by a person concerning an act of abuse * * * if the declarant either testifies at the proceeding and is subject to cross-examination, or is unavailable as a witness but was chronologically or mentally under 12 years of age when the statement was made * * *. However, if a declarant is unavailable, the statement may be admitted in evidence only if the proponent establishes that the time, content and circumstances of the statement provide indicia of reliability, and in a criminal trial that there is corroborative evidence of the act of abuse and of the alleged perpetrator's opportunity to participate in the conduct and that the statement possesses indicia of reliability as is constitutionally required to be admitted. No statement may be admitted under this paragraph unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, except for good cause shown."

"No statement may be admitted under this paragraph unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, *except for good cause shown.*"

(Emphasis added.) As noted, the state's notice under that provision was filed on April 9, 2002, just two days before trial was scheduled to begin. Although trial did not actually begin until April 16, it is undisputed that the notice was not timely filed. Accordingly, unless the state showed good cause for its failure to timely file the notice, the trial court erred in admitting the statement.

■■ We review the trial court's determination that good cause existed for not complying with the 15-day requirement for an abuse of discretion. *State v. McKinzie*, 186 Or App 384, 395, 63 P3d 1214, *rev den*, 336 Or 16 (2003). "In the context of OEC 803(18a)(b), 'good cause' exists when there is good cause for not giving the notice. In context, the exception contemplates an explanation for why notice was not given within the time limit * * *." *Id.* (emphasis omitted).

At the pretrial hearing on the state's motion to admit the hearsay statements, defense counsel objected:

"The purpose of the hearing was to bring in hearsay statements under [OEC] 803(18a)(b), which I believe it is, because I got the notice on Monday as well. That's not the requisite 15 days, that's the least amount of notice that we need as for the statute. [OEC] 803(18a)(b) requires 15 days['] notice before these statements can be admitted at trial."

The prosecutor responded that the notice was not timely filed because he and defense counsel had been involved in plea negotiations up until the time of trial. Defense counsel responded that, while most cases settle, not all cases settle. Further, defense counsel noted that the state had reported at call that the state was ready.

The trial court was not persuaded by defendant's arguments. The court explained, "Well, my concern is on this, one of the reasons I'm finding good cause is the child apparently is not here, despite from having a subpoena being

served on him * * *. * * * I'm basing my decision on his apparent unavailability now." Defense counsel questioned whether the declarant's unavailability was relevant to the good cause determination and he suggested that an anticipated guilty plea also should not be considered good cause. The court ruled, "I'm not using [the prosecutor's belief that the case would be resolved by a plea] as good cause, that's what I'm trying to tell you. That's not the good cause. The good cause— that's one element of good cause, but the other element is, is the fact that the child is not here." The trial court's reasoning is unclear. For purposes of this opinion, we assume that the trial court held that (1) the ongoing plea negotiations and (2) J's unavailability constituted good cause for the state's failure to timely file the 15-day notice.

On appeal, defendant argues that neither the existence of ongoing plea negotiations nor the declarant's unavailability on the day of trial constitutes good cause for late filing of the statutorily required notice. He points out that "[p]lea negotiations customarily occur in criminal cases. They are often unsuccessful. Oftentimes they fall apart, often at the last minute. Failure to prepare for trial while plea negotiations are ongoing cannot be construed as anything other than simple neglect."

We agree with defendant, at least under the holding of the trial court, as we understand it, that the trial court erred in concluding that the state had established good cause. We have held that the state's provision of the proffered hearsay statements to a defendant in discovery does not constitute good cause for failing to comply with the 15-day notice requirement. *McKinzie*, 186 Or App at 395; *State ex rel Juv. Dept. v. Sauer*, 189 Or App 78, 84, 73 P3d 293 (2003); *State v. Leahy*, 190 Or App 147, 151, 78 P3d 132 (2003). We also have suggested that the fact that a prosecutor was new to the case did not excuse the prosecutor's failure to comply with the 15-day rule. *Leahy*, 190 Or App at 150. Here, as we have presumed, the trial court concluded that the ongoing plea negotiations and the declarant's unavailability constituted good cause for the state's failure to timely give notice of its intent to offer statements under OEC 803(18a)(b). On the facts here, the ongoing plea negotiations do not excuse the state's failure

to give timely notice.[5] "The only plausible understanding of the good cause exception in the rule is that the state may provide an explanation for why the time requirement could not be met in a particular case." *McKinzie*, 186 Or App at 395.

■  The second "element" that the trial court cited as good cause was J's unavailability as a witness at trial even though J was under subpoena. In some circumstances, a witness's unavailability may constitute good cause under OEC 803(18a)(b).[6] However, the particular circumstances in this case do not constitute good cause for the state's failure to comply with the 15-day notice requirement in OEC 803(18a)(b).

The state intended J to testify at trial and offer his statement. The prosecutor's affidavit in support of the state's April 9 notice stated, "the state expects both [J] and Olivia Rios to testify at defendant's trial." Yet, at that time, the prosecutor had not served a subpoena on J, and there is nothing in the record that demonstrates that the state attempted to serve J with a subpoena before the April 9 notice. In fact, the state did not serve J with a subpoena until the evening of April 10, the day before the trial. The state offers no explanation or reason why it waited until less than 15 days before trial to serve J with a subpoena.

The state's reason why it wished to use J's statement was his unavailability to testify at trial. The state did not and could not know that J was unavailable to testify until the morning of the trial. Further, the state does not explain why it failed to comply with the 15-day notice requirement under OEC 803(18a)(b). In those circumstances, the state has not

---

[5] In *Sauer*, the state maintained that ongoing settlement negotiations constituted "good cause" in this same context. We did not address that argument, other than to note that the negotiations in that case had ended 21 days before trial. 189 Or App at 84 n 2. Here, we do not decide whether good cause could exist if a prosecutor relied on defense counsel's specific statement about the pendency of the plea or other waiver of the need to file the required 15-day notice.

[6] For example, if a party had served a declarant with a subpoena three weeks before trial, but discovered one week before trial that the declarant was in the hospital and would not be released from the hospital until after the trial, such a circumstance might constitute good cause for the late filing of the notice of intent to offer the declarant's statement at trial.

established good cause for its failure to comply with the 15-day notice requirement under OEC 803(18a)(b). Accordingly, the trial court erred in admitting J's hearsay statement.

█        The state asserts that, even assuming that the trial court erred in admitting the statements, "the error was undoubtedly harmless." Defendant remonstrates that, in light of the conflicting evidence and Rios's recantation, admission of J's statement was not harmless. For the reasons explained below, we agree that the error was not harmless.

█        Article VII (Amended), section 3, of the Oregon Constitution " 'requires this court to affirm judgments of lower courts if, in the opinion of this court, the judgment achieved the correct result, even if error was committed.' " *State v. Bowen*, 340 Or 487, 500, 135 P3d 272 (2006) (quoting *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988)). Moreover, evidentiary error is not presumed to be prejudicial, and we will not find prejudicial error unless a substantial right of the party is shown to be affected. OEC 103(1). The burden is on a defendant who appeals his conviction to show that a court's error affected a substantial right. *See State v. Lotches*, 331 Or 455, 487, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001) ("A defendant in a criminal case assigning error to the exclusion or admission of evidence must establish that the error was not harmless."). On appeal, we are obliged to affirm a conviction, "notwithstanding any evidentiary error, if there is little likelihood that the error affected the verdict." *Gibson*, 338 Or at 576. To assess that likelihood, we "examine the nature of the error that occurred below and the context of that error." *Id*. Even if the record provides other evidence of guilt that is substantial and convincing, we must reverse a conviction unless we find that there was little likelihood that the conviction was actually affected by the error. *State v. Davis*, 336 Or 19, 30-31, 77 P3d 1111 (2003).

Applying those principles to this case, we cannot say that the admission of J's statement to Soliz likely did not affect the verdict. The state's factual theory of the case, as set out above, was that defendant attacked Rios in the presence of the children and that she bit him in self-defense. Although Rios did not testify, her statement to the defense investigator

supported defendant's story that he hit her only in self-defense.[7] No one present during the altercation testified at trial, and both stories were consistent with the medical evidence. As the prosecutor argued to the jury, "all of these—all of these elements to all * * * of these crimes are going to come down to what you folks believe happened. It either happened one way or it happened another way." The prosecutor relied repeatedly on J's statement to try to convince the jury that "it happened" the way the state asserted that it did, referring numerous times to that statement as supporting the state's version of the facts.

Defense counsel, in contrast, pointed out that Rios's stepfather had testified that Rios was reputed to be untruthful and that Rios had, in fact, told a different story to the defense investigator—one that supported defendant's version of the facts. He also stressed that the jury knew nothing about the seven-year-old J that would allow it to assess his credibility.

As noted, in determining whether the erroneous admission of evidence likely affected the verdict, we consider the nature of the error and the context in which it occurred. *Davis*, 336 Or at 32-33. As in *State v. Smith*, 194 Or App 697, 706, 96 P3d 1234 (2004), "the trial centered on a credibility dispute between defendant and the alleged victim." Here, the defense and the state presented two different versions of the alleged criminal conduct, no eyewitness testimony regarding the assault was introduced, there was evidence that the alleged victim later recanted, and the defense introduced evidence that the alleged victim was untruthful. Finally, the erroneously admitted evidence "goes directly to the heart of defendant's factual theory of the case." *Davis*, 336 Or at 34. In that context, we cannot say—regarding either the assault or menacing charge—that J's eyewitness statement had little likelihood of affecting the verdict.

Reversed and remanded.

---

[7] Defendant properly raised self-defense and the jury was instructed on that defense.