Argued and submitted May 30, 2007, affirmed February 27, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN WILLIAM HOBBS,
*Defendant-Appellant.*

Washington County Circuit Court
C040607CR; A126091

179 P3d 682

David Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne,

Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Katherine H. Waldo, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

ORTEGA, J.

**ORTEGA, J.**

Defendant appeals a judgment of conviction of two counts of second-degree sodomy, ORS 163.395. We write to address defendant's first eight assignments of error, all of which relate to the admissibility of particular excerpts, including 10 entire pages, from the victim's journal; we reject the other assignments of error without discussion, and affirm.

The following facts are pertinent to our review. During her eighth-grade school year, when she was 13 years old, the victim lived with her sister and her sister's husband, defendant, because she and her mother were having conflicts. During her stay there, defendant sometimes yelled at or disciplined the victim for violating household rules or skipping school. The victim left the household near the end of the school year, after overhearing defendant tell her sister that either he or the victim needed to leave. About four months after her departure, the victim was hospitalized because of a suicide attempt and then entered residential therapy.

A few months later, while in the residential therapy program, the victim wrote a "journal" in which she described the development of her relationship with defendant (whom she called "Kay"), her feelings, and the sexual conduct that occurred between them. At the time she wrote the journal, she felt "[j]ust really angry" as a result of medication side effects. Although the parties and witnesses referred to the document as a journal and we follow suit, the document was not a day-to-day record of the victim's life. Rather, she wrote the journal over the course of two days, some months after the occurrence of the incidents that she described; she explained that she wrote it "[be]cause it was in my head, and I needed to get it out." The entire journal is about the victim's relationship with and feelings about defendant.

The victim's mother found the journal. After reading it, she believed that the victim might have been abused, so she contacted a youth advocate and turned the journal over to police.

Detective Herb interviewed the victim. Herb testified that, although the victim became very upset when asked

questions about her relationship with defendant and the contents of her journal, she reported that defendant had engaged in acts of sodomy with her. She also told Herb that the relationship " 'wasn't [defendant's] fault.' "

Herb then interviewed defendant. Herb testified that, when he first told defendant that he wanted to discuss defendant's relationship with the victim, defendant said, " 'Nothing really happened. It's over and done with.' " Herb told defendant that the victim had been so affected by events "that I believed there was maybe a connection to this suicide attempt. And I knew that he knew about this. And I told him that, you know, things like this for a young child can cause a lot of anxiety and a lot of confusion." Defendant admitted kissing the victim but denied that any sodomy had occurred. After Herb told defendant that the victim had reported that she had performed oral sex on him, defendant responded, " 'Well, if that did happen, I don't know about it.' " He later added that he sometimes became so drunk that he did not know what was happening but that he thought he would remember oral sex if it had occurred.

The victim had been reluctant to talk about the events with Herb, and she was reluctant to testify at trial. She was in a residential treatment facility at the time of trial to get stabilized after her suicide attempt. She explained that she had "overdosed on pills, because things were in my mind that I couldn't handle 'cause I felt guilty" about hurting her sister, defendant's wife. She considered her journal to be very personal and private. She expressed concern that her failure to keep the events hidden could end her sister's marriage and cause defendant to "get[ ] locked up."

When asked about what had happened, she responded that she did not "want to explain" her relationship with defendant and did not "want to say" what kind of touching had occurred. She described her relationship with defendant as "[j]ust a friendship that got too close." The victim nevertheless testified that defendant had engaged in acts of sodomy with her and had done the things described in her journal.

As part of its case, the state initially offered nine statements from the victim's journal, two of which were

admitted without objection. In the first of those two statements, the victim wrote, "[W]e kissed[,] well[,] ended up more like making out. We eventually ended up doing [a] lot of shit, like we both went down on each other and banging once, nearly having sex * * *!" In the second, she wrote, "Why do we fool around, how can he like fooling around with a fat, chubby 14[-year-]old girl[?]" Defendant objected to the following seven statements:

1. "I don't remember exactly but he ended up telling me he didn't know why or when but he thought of me and him kissing like intimate kissing!"

2. "We talked about it more the next time we were alone and had a chance to talk, asking each other curiously what would happen if we did kiss? How far would we let it go? How far would we go?"

3. "I want to be with him, I want him I guess, I think I love him, I thought it was lust and I'd get over it but it's been over a year and it keeps on getting stronger."

4. "Also Saturday, I asked him does he think I overdosed because of all this. I told him it wasn't him really. But honestly this[,] well[,] these pages tell why."

5. "I still remember Kay coming up to see me at the hospital! He asked my sitter [sic] how was I doing and then I melted in sadness, because why I od'ed and then him going up to see me, I guess you can say I've fallen, fallen deep for him."

6. "I can write him telling him but I don't want anyone to find it cuz then we'd be fucked."

7. "If he says he doesn't look at me the way he should then what does he see or look at me like? A ho? Booty call? What."

The state offered those statements under OEC 803(18a)(b), which permits the admission of hearsay statements "concerning an act of abuse as defined in ORS 107.705 or 419B.005."[1] Objecting, defendant contended that the statements did not concern an act of abuse. As we discuss in more

---

[1] Under ORS 419B.005(1)(a)(C), "abuse" includes sodomy.

detail below, he also argued that the statements about the victim's feelings were irrelevant and "unduly prejudicial under [OEC] 403." The trial court ruled that all of the statements concerned an act of abuse and were admissible.

Later, the state offered 10 entire pages of the journal, which included all of the foregoing statements. Defendant objected, contending that many of the statements in the journal were irrelevant to the charged acts and did not concern an act of abuse. The trial court overruled that objection.

The defense theory was that the victim was a troubled teenager who made "mythical, fantastical allegations" against defendant to gain her mother's approval. In support of that theory, defendant offered testimony from the victim's sister (defendant's wife) and four other witnesses that the victim was not truthful. The victim's sister also testified that her mother had never liked defendant. Two witnesses testified that the victim's mother had said that she was "gonna hang [defendant] by the testicles"—a statement that the victim's mother denied making.

■     A jury found defendant guilty of two counts of second-degree sodomy, and he now appeals, contending that the trial court erred by admitting the excerpts and the journal under the hearsay exception contained in OEC 803(18a)(b) for statements of a child victim "concerning an act of abuse." We review that decision for errors of law. *State v. Kayfes*, 213 Or App 543, 551-52, 162 P3d 308, *rev den*, 343 Or 690 (2007).

The portion of OEC 803(18a)(b) that is pertinent here provides:

> "A statement made by a person concerning an act of abuse as defined in ORS 107.705 or 419B.005 * * * is not excluded by ORS 40.455[, which provides that hearsay is not admissible unless an exception applies,] if the declarant * * * testifies at the proceeding and is subject to cross-examination * * *."

Defendant contends that the statements from the victim's journal were not statements "concerning an act of abuse," because the statements concern kissing (which, in defendant's view, is not an act of abuse) or concern the victim's feelings or questions rather than a specific physical act. In defendant's view, only statements about the charged incidents of

abuse fall within OEC 803(18a)(b). Defendant contends that, if the legislature had intended "concerning" to encompass any statement relevant to the abuse generally, then it would have used the phrase "relevant to" rather than "concerning." He also argues that, if the legislature had simply meant "relevant to," then the entire phrase would be unnecessary because only relevant evidence is admissible in any event.

In support of that reading of OEC 803(18a)(b), defendant relies on the legislative history of the phrase "concerning an act of abuse." Before 1991, the rule was limited to a statement that "describes an act of sexual conduct." Relying on legislative history in which a witness urged a change to "concerns an act of sexual conduct" in order to allow hearsay evidence about the victim's attire and similar details, defendant contends that the legislature intended only to allow testimony about the immediate situation and environment surrounding the "act of abuse."

The state responds that defendant's reading of OEC 803(18a)(b) is too narrow. In the state's view, the rule is intended to permit evidence of a child's statements to provide context helpful to the trier of fact's evaluation of the credibility of the child's accusations.

The meaning of the phrase "[a] statement * * * concerning an act of abuse" presents a question of statutory construction that we resolve using the method set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We first examine the text in context and, if the legislature's intent is not clear after that first level of analysis, we consider legislative history. *Id.* Here, the plain meaning of the pertinent text supports a broad reading of the rule and, if a narrow reading were plausible enough to require us to resort to legislative history, that history confirms the broad reading of the rule. Accordingly, we conclude that the victim's journal and the statements excerpted from it were statements concerning an act of abuse within the meaning of the statute and therefore were not inadmissible hearsay.

■ The parties' dispute centers around how closely or directly a statement must relate to the abuse in order to "concern[ ] an act of abuse." An examination of the ordinary

meaning of "concerning" shows that the word is broadly inclusive. A common definition of the verb "concern" is "**1 a :** to relate or refer to **:** be about ‹this story ~s the beginnings of the modern age› **b :** to bear on ‹another rather serious drawback associated with nucellar seedlings ~ed the fact that they were . . . slower in developing flower parts * * *›." *Webster's Third New Int'l Dictionary* 470 (unabridged ed 2002). Similarly, the preposition "concerning" commonly means "relating to **:** REGARDING, RESPECTING, ABOUT ‹information ~ drug addiction› ‹skepticism ~ the effectiveness of controls and subsidies›." *Id.* Thus, a statement "concerning" an act of abuse is a statement relating to, regarding, respecting, or about an act of abuse. That ordinary meaning shows that the legislature intended the rule to have an expansive scope to allow statements that relate to or are about an act of abuse.

The legislative history of OEC 803(18a)(b) confirms that understanding. Although the outer limits of a statement "concerning an act of abuse" may not be clear, we need not resolve those limits precisely, because the legislative history reveals that the legislature intended to allow evidence such as the journal at issue here.

The 1991 expansion of the rule to allow statements that "concern" an act of abuse was suggested by Chris Gardner of the Oregon District Attorneys Association, who identified perceived problems with the earlier version of the rule during a hearing on a bill already containing other amendments to the rule:

> "I have been in courtrooms where a mother was testifying as to statements from her child and said, 'I asked the child what she was wearing in the motel room where she was sexually abused and my daughter told me a T—' 'Objection, Your Honor. That doesn't describe the act of sexual conduct.' Certainly setting the scene for the act, concerns that act, and should be admissible in order to bring to bear to the trier of fact a complete explanation of what the child has said. That's probably the surest way we can determine and, and, frankly, it's frequently the only evidence we have to determine is the child telling the truth, is there credibility or not to this statement. So I would suggest changing the word 'describes' to 'concerns.' "

Tape Recording, House Committee on Judiciary, Subcommittee on Family Justice, HB 2395, Feb 6, 1991, Tape 22, Side B (statement of Chris Gardner).

Gardner went on to emphasize that, typically, the way in which a child reveals the abuse is the most compelling evidence available for a trier of fact assessing credibility of the child. *Id.* He reiterated that point at a later hearing before the same subcommittee. Tape Recording, House Committee on Judiciary, Subcommittee on Family Justice, HB 2395, Feb 22, 1991, Tape 40, Side B (statement of Chris Gardner). When the bill moved to the Senate, Gardner again provided similar testimony, urging support for expanding the hearsay exception of OEC 803(18a)(b) by changing the word "describes" to "concerns"

> "to allow * * * the child's whole expression of the abuse and how she's related that to other people to be admitted. With most sex abuse, the only evidence we have—it's a credibility case, based on the word of the child versus that of the perpetrator. And some of the most compelling evidence is how did the child go about disclosing the abuse? Who did they tell? What were the circumstances when they told? * * * What was the child's demeanor at that time? And simply we seek to allow that child and the people who heard that child to lay that picture out. Now that picture may not always be compelling proof of guilt. Sometimes that's pretty good evidence the other way."

Tape Recording, Senate Committee on Judiciary, HB 2395, May 20, 1991, Tape 170, Side B (statement of Chris Gardner). The legislature ultimately adopted the amendment that Gardner suggested.

Thus, regardless of any textual ambiguities regarding the scope of a statement "concerning an act of abuse," the legislature understood that phrase to include "the child's whole expression of the abuse and how she's related that to other people." The legislature intended to allow the trier of fact to assess a victim's credibility by evaluating the way in which the victim disclosed the abuse. To do so, the trier of fact could hear evidence about the victim's demeanor and emotional state, as well as the victim's report that "set[s] the scene for the act."

Here, although the victim may have intended to keep her journal private, the journal was her "expression of the abuse"; the entire document is about the events leading up to the abuse, the abuse itself, and the victim's feelings during and after that time. The journal paints the picture of a developing sexual relationship between defendant and the victim, beginning with his questions about kissing and culminating in the charged acts of abuse, and includes an account of the victim's emotional reaction to the changing relationship. The legislative history of OEC 803(18a)(b) makes it clear that the legislature intended that exception to the hearsay rule to allow admission of exactly that type of evidence in order to allow the trier of fact to assess the victim's credibility. The trial court therefore did not err by overruling defendant's OEC 803(18a)(b) objection.

■        Defendant also contends that the statements should have been excluded under OEC 403 on the grounds that they were substantially more prejudicial than probative and that the trial court erred by failing to make findings after defendant objected to the admission of the statements.[2] He relies on *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987) (setting out a four-step analysis for determining whether evidence should be excluded under OEC 403), and *State v. Pierce*, 189 Or App 387, 391-92, 76 P3d 172 (2003) (accepting a concession of legal error where the record did not show that the trial court had engaged in the required analysis). The state responds that the issue was not preserved because defendant failed to request findings; that "it is clear from the context of the discussion of the parties that the trial court weighed the potential for unfair prejudice against the probative value"; and that any error in the admission of the evidence was harmless in light of the other statements submitted.

We conclude that much of defendant's OEC 403 argument on appeal is unpreserved because, at trial, defendant objected on that basis to only part of the evidence that is

---

[2] OEC 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

the subject of his present assignment of error. *State v. Lotches*, 331 Or 455, 492-93, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001). To the extent that the issue is preserved, any error was harmless because the statements were cumulative of other evidence that was admitted without any sustainable objection.

In the trial court, when discussing the admissibility of statements excerpted from the journal, defendant focused on the OEC 803(18a)(b) objections discussed above. He made an OEC 403 objection to only some of the statements offered by the state, apparently addressing statements 3 through 7 in the list set forth above, although the argument is not a model of clarity regarding the exact statements to which he was referring. He contended that statements "just talking about her feelings about what she said happened" and her suicide attempt not only did not fit within the hearsay exception of OEC 803(18a)(b) but also were "more prejudicial than probative" and would play on the jury's sympathies.

On the admissibility of the specific statements excerpted from the victim's journal, the trial court ruled, "I think they're all concerning the statement of abuse. I'm going to allow them in * * *." The court did not make any findings under OEC 403, nor was there any further discussion of that issue.

Later, when the court considered whether to admit 10 entire pages of the journal, defense counsel stated that "my original argument was there's only one statement or two that relate to the abuse. The Court overruled that objection." When asked to identify his objection to admission of the pages, counsel stated, "There are a lot of things in here about [the victim's] life that she talks about. A lot of those things aren't relevant to this act alleged in this charging instrument." He added, "I guess I just rely on the same objection I made before, that many of these statements don't relate to an act of abuse; they're recounting conversations." Thus, his objection to admission of the journal as a whole was that it was irrelevant and inadmissible hearsay, not that its probative value was substantially outweighed by the danger of unfair prejudice.

Although it is not entirely clear which statements were the subject of defendant's OEC 403 objection in the trial court, we assume for purposes of our analysis that he properly objected to statements 3 through 7 in the numbered list provided above. 218 Or App at 302. Because all of those statements were merely cumulative of other evidence, we conclude that any error in their admission was harmless.

Evidentiary error is not presumed to be prejudicial, and a defendant appealing a conviction has the burden to show that the error affected a substantial right. Or Const, Art VII (Amended), § 3; OEC 103(1); *see also State v. Torres*, 206 Or App 436, 445, 136 P3d 1132 (2006). We will not reverse if there is little likelihood that the error affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). When the disputed evidence is merely cumulative of other evidence establishing the same point, the error is harmless. *State v. Poitra*, 206 Or App 207, 212, 136 P3d 87, *rev den*, 341 Or 245 (2006).

Here, the statements that are the subject of the portion of defendant's assignment of error that is preserved were merely cumulative of similar evidence in the record. The victim's challenged statements in her journal about the depth of her feelings for defendant and her questions about their relationship (statements 3 and 7) were cumulative of other very similar statements in her journal to which no objection was made. Her statement that she could write to defendant "but I don't want anyone to find it cuz then we'd be fucked" (statement 6) was cumulative of testimony at trial that she wished to keep her journal private, did not want to respond to the police investigation or to testify at trial, and did not want her relationship with defendant to be known because she feared the repercussions in her family. Finally, the two challenged statements linking the victim's suicide attempt to her relationship with defendant (statements 4 and 5) were cumulative of another portion of her journal and of trial testimony. Specifically, the pages of the journal that were admitted without an OEC 403 objection included a complete description of the suicide attempt, which was more detailed than the two statements as to which defendant raised an OEC 403 objection. In addition, the victim's and Herb's trial testimony linked the suicide attempt to the victim's relationship with

defendant. In light of the trial evidence, the two other statements about the victim's apparent suicide attempt had little likelihood of affecting the result at trial.

Affirmed.